## THE MAYOR AND COMMON COUNCIL OF THE CITY OF SACRAMENTO, RESPONDENT, v. THE STEAMER NEW WORLD, APPELLANT.

WHARVES AND WHARFAGE—MUNICIPAL RIGHTS.—Where the city authorities have the right to erect, repair and regulate wharves and the rates of wharfage, and the banks of the river in front of the city are dedicated to the public, it follows that the right to collect wharfage devolves on the corporation.

WHARFAGE DEFINED.—The term wharfage is applied to a charge for landing goods, whether upon an artificial erection or a natural landing.

APPEAL from the Sixth Judicial District.

This was an action to recover $4,400 for wharfage or levee dues for laying at the wharf or bank by the levee in the harbor, and within the corporate limits of the plaintiff, fourteen trips.

Two ordinances had been passed by the city, one on the 2d of January, 1852, and the other on the 2d of June, 1852, to *regulate wharfage or levee dues and the du- [42] ties of the Harbor Master, and upon them and the statutes incorporating the city, this action was based.

The answer denies generally the allegations of the complaint, and alleges that the steamer always laid fifty to one hundred feet below low water mark; that defendant never applied to plaintiff for leave to occupy the place in which

the steamer laid, and never used or made fast to or landed goods on the bank or levee within the corporate limits of the plaintiff.

The cause was tried by the Court, both parties waiving a jury.

The 8th section of the ordinance of January 2d, 1852, is in these words: "The following rates and charges are hereby ordained: All vessels or water craft, excepting steam or ferry boats, which shall or may come within the harbor of this city, and land at the levee or bank, or be made fast thereto, or to any vessel thereto fastened, or shall receive or discharge any freight or passengers in this city, shall severally pay the sum of fifteen cents for each ton of such boat's burden, Custom House measurement. All steamboats shall pay the sum of eight cents per ton, Custom House measurement, for each and every arrival; *provided,* no steamer shall be rated at more than 500 tons."

The ordinance of June 2d, 1852, provided for laying out the levee and banks of the Sacramento and American Rivers, by the City Surveyor, into separate sections, to be leased by the Mayor and Common Council to such parties as might desire to rent them, the parties renting being required to construct stationary or floating wharves. Section 3d of the ordinance of June 2d, 1852, is in the following terms: "The master, owner or person having charge of any water craft, using or coming to lay at the levee banks aforesaid, or any of said sections of the wharves aforesaid, shall pay unto the city or lessee, or lessees, for the time being, of the section at which said water craft may lay, such rates or fees of wharfage, for so laying or using, as are established by section 6 of this ordinance."

Section 6th provides "that the city or lessee, or [43] lessees of *the levee or banks of the river, may collect from water craft, using or coming to lay at the levee banks or sections of said levee, the rates of wharfage for each landing and day said water craft shall remain thereat. For steamboats of 500 tons and over, the rate to be $30."

It was proved that the bank of the river had been dedica-

ted to the public. That the sections mentioned in the ordinance of June 2d, had been laid out by the Surveyor; that the defendant always landed alongside the storeship "Eliza"; that the "Eliza" is opposite to one of the sections of the levee; that defendant always lies out beyond the low water mark; and that the "Eliza" is connected with the levee by a staging, and that the "Eliza" and her staging have been in the same place since June, 1849; that the "Eliza" belonged to the defendant, who has paid rent to the plaintiff, for the place occupied by her, up to January, 1852.

The defendant moved the Court for a nonsuit, on the ground that the plaintiff had not shown facts sufficient to constitute a cause of action, which motion was denied by the Court.

Upon a finding in favor of the plaintiff the defendant moved for a new trial, which the Court refused, and gave judgment in favor of the plaintiff for $1,920 and costs. The defendant appealed.

*Winans & Robinson,* for Appellant.

*Latham & Aldrich,* for Respondent.

Mr. J. HEYDENFELDT delivered the opinion of the Court. Mr. Ch. J. Murray concurred.

The 7th section of the charter of the City of Sacramento, which was in force when the right of action accrued, gives to the city authorities the right "to erect, repair and regulate wharves and the rates of wharfage." It is insisted by the defendant that this language gives no power to collect wharfage, or if it does, such power must be dependent upon the actual construction of wharves.

It appears from the record, that a certain space in front of the city, and along the banks of the river, was dedicated to the public as a street or highway.

*This being so, it follows that no private person [44] had the right to erect wharves or charge wharfage, because no one owned land on the bank of the **river, and**

thus the whole of this right devolved on the corporation. What, then, could be the meaning of the Legislature in giving power to regulate the rates of wharfage, if the proper construction of that power does not include the right to collect it? It would be without effect or meaning, and that, which to the most ordinary apprehension appears to be the intention, would be defeated.

It is true, as urged in the argument, and according to the best authorities, that a wharf is properly an artificial construction, and to such its meaning must be limited; but it does not follow that the definition of wharfage is to be confined to the charge for landing at a wharf. Words must be taken according to their most universal acceptation in common use, and so we find the term wharfage generally applied to a charge for landing goods, whether upon an artificial erection, or a natural landing. In illustration of this, it will be seen that in the Act of 1852, to incorporate the City of Sacramento, the 7th section gives power to the City Council "to erect, repair and regulate wharves, and the rates of wharfage, whether wharves are constructed or not." Here, from the manner of its use, it appears that wharfage has a definite existence, entirely disconnected from any artificial construction, and although the whole of this sentence of the Act is extremely awkward and ungainly, yet the intention is evident, and the application of the term wharfage is in accordance with the well understood usage of the English language.

The points taken as to the insufficiency of the ordinance of June, 1852, or the want of proper action under it, we do not think are sustained by a careful examination of it.

Judgment affirmed.